IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

```
FILED
IN OPEN COURT

JAN 1 2 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA
```

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 4:21-cr-85____ |
| | ) |
| JENNA MITCHUM, | ) |
| | ) |
| Defendant. | ) |

## STATEMENT OF FACTS

By signing below, the parties stipulate that the allegations in the criminal information and the following facts are true and correct, and that had the matter gone to trial, the United States would have proven them beyond a reasonable doubt, by competent and admissible evidence.

### Background

1. JENNA MITCHUM, the defendant herein, and her husband and coconspirator, MALIK MITCHUM, resided in Hampton, Virginia, within the Eastern District of Virginia, and later moved to Severance, Colorado, in or about April 2021.

2. The defendant was unemployed during all times relevant to the offense conduct. The defendant's husband, MALIK MITCHUM, worked as an Air Force Vehicle Asset Manager assigned to Joint Base Langley-Eustis prior to his separation from the Air Force in or about October 2021 with an Other Than Honorable characterization of service.

### Government Programs to Mitigate Economic Impact of COVID-19 Pandemic

3. The United States Small Business Administration (SBA) is an executive-branch agency of the United States government that provides support to entrepreneurs and small

1



businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

4. As part of this effort, the SBA enables and provides for loans through banks, credit unions and other lenders. These loans have government-backed guarantees. In addition to traditional SBA funding programs, The CARES Act, which was signed into law in March 2020, established several new temporary programs and provided for the expansion of others to address the COVID-19 pandemic.

5. One of these new programs was the SBA Paycheck Protection Program (PPP), which provided for loans as a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA forgave all or part of loans if the applying business kept its employees on the payroll for eight weeks and submitted documentation confirming that the loan proceeds were used for payroll, rent, mortgage interest, or utilities. Interested applicants apply through an existing SBA lender or any other participating federally insured financial institution.

6. The PPP application process requires applicants to submit a Borrower Application Form through an SBA-approved financial entity. The application contains information as to the purpose of the loan, average monthly payroll, number of employees and background of the business and its owner, including questions relating to criminal history. Applicants are also required to make good faith certifications, including that economic uncertainties have necessitated their loan requests for continued business operations and that they intend to use loan proceeds only for the authorized and not any duplicative purposes.



7. Another related response to the COVID-19 pandemic has been an expansion of an existing disaster-related program – the Economic Injury Disaster Loan (EIDL) – to provide for loan assistance (including $10,000.00 advances) for small businesses and other eligible entities for loans up to $2 million. The EIDL proceeds can be used to pay fixed debts, payroll, accounts payable and other bills that could have been paid had the disaster not occurred; however, such loan proceeds are not intended to replace lost sales or profits or for expansion of the business.

8. Unlike certain other types of SBA-guaranteed loans, EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal and application. The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including information as to the gross revenues for the business prior to January 31, 2020; the cost of goods sold; and information as to any criminal history of the business owner. Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

<center>Scheme and Artifice to Defraud</center>

9. From in or about March 2020 and continuing until in or about May 2021, the defendant joined together with MALIK MITCHUM and others to engage in a scheme and artifice to defraud and for obtaining money and property by materially false and fraudulent pretenses, for which the defendant transmitted and caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, signals and sounds.

A.   Alpha 2 Omega Logistics – March 2020 EIDL

10.   On or about March 31, 2020, the defendant and MALIK MITCHUM electronically applied for an EIDL using the company name Alpha 2 Omega Logistics LLC. MALIK MITCHUM had previously registered Alpha 2 Omega Logistics with the Wyoming Secretary of State in or about May 2019.

11.   In the EIDL application, the defendant and MALIK MITCHUM falsely claimed that Alpha 2 Omega Logistics was located at *** Expedition St in Hampton, Virginia; had annual revenue of approximately $500,000 for the 12 months preceding the disaster; was involved in the transportation industry; and had 12 employees as of January 31, 2020. In fact, Alpha 2 Omega Logistics had no such office, revenue, business activity, or employees.

12.   As a result of the EIDL application, the defendant was offered loan proceeds of $150,000.00 and a $10,000.00 grant. MALIK MITCHUM electronically signed a Loan Authorization and Agreement and other associated documentation on May 22, 2020. This agreement contained certifications that all representations in the EIDL application were "true, correct and complete and are offered to induce SBA to make this loan," and contained warnings of penalties for misapplication of proceeds and false statements or misrepresentations to the SBA.

13.   On or about May 26, 2020, EIDL funds in the amount of $149,900.00 and $10,000 were deposited in the defendant's account at Langley Federal Credit Union (ending in 9078). Between on or about May 27, 2020, and June 23, 2020, the defendant and MALIK MITCHUM structured more than a dozen withdrawals of U.S. currency from this account – often for amounts just under the reporting threshold.

B.      Alpha 2 Omega Logistics – April 2020 PPP Loan

14.      On or about April 21, 2020, the defendant and MALIK MITCHUM electronically applied for a PPP loan through Bank of America using the entity Alpha 2 Omega Logistics. Bank of America subsequently approved the PPP loan in the amount of $148,958.00.

15.      In the PPP application to Bank of America, the defendant and MALIK MITCHUM falsely claimed that Alpha 2 Omega Logistics was located at *** Expedition Street in Hampton, Virginia; had annual revenue of $500,000.00 for the 12 months preceding the disaster; had 15 employees; and that loan proceeds were to be used for business-related purposes. In fact, Alpha 2 Omega Logistics had no such office, revenue, business activity, or employees.

16.      On or about July 27, 2020, PPP funds in the amount of $148,958.00 were deposited in a Bank of America account (last four digits 5637) held in the name of Alpha 2 Omega Logistics. Between on or about July 27, 2020, and on or about August 10, 2020, the defendant and MALIK MITCHUM obtained this money by structuring withdrawals of U.S. currency and transferring funds to accounts held in the name of other entities they owned.

17.      The defendant and MALIK MITCHUM subsequently submitted more false documentation, and this PPP loan was forgiven by the financial institution and the federal government.

C.      Southern by the Belle – EIDL Advance

18.      On or about June 19, 2020, the defendant and MALIK MITCHUM applied for an EIDL using the entity Southern by the Belle. The defendant later registered Southern by the Belle with the Virginia State Corporation Commission on or about June 25, 2020.

19.      This EIDL application was denied, but the defendant and MALIK MITCHUM

5



obtained an $8,000.00 advance on or about June 22, 2020. They obtained these funds under false pretenses by representing that Southern by the Belle employed eight people as of January 31, 2020; had annual revenue of approximately $85,000; and that the business opened on December 30, 2019. In fact, Southern by the Belle had no such employees, revenue, or business activity.

D.     A2O Auto Brokers – June 2020 EIDL

20.    On or about June 25, 2020, the defendant and MALIK MITCHUM electronically applied for an EIDL using the entity A2O Auto Brokers. MALIK MITCHUM registered A2O Auto Brokers LLC with the Virginia State Corporation Commission on or about the same day.

21.    In the EIDL application, the defendant and MALIK MITCHUM falsely claimed that A2O Auto Brokers LLC was located at *** Expedition St in Hampton, Virginia; had annual revenue of approximately $300,000 for the 12 months preceding the disaster; was involved in the automotive/gas industry; had 10 employees as of January 31, 2020; and was opened on December 22, 2019. In fact, A2O Auto Brokers had no such office, revenue, business activity, or employees.

22.    As a result of the EIDL application, the defendant and MALIK MITCHUM were offered loan proceeds of $115,000.00 and a $10,000.00 grant. They again signed loan agreements and other documentation certifying that the representations in their application were true and correct under penalty of perjury.

23.    On or about June 30, 2020, the defendant and MALIK MITCHUM obtained the $10,000.00 grant. They later obtained the $115,000.00 EIDL on or about August 31, 2020. The defendant and MALIK MITCHUM subsequently structured withdrawals of U.S. currency



and transferred funds to accounts held in the name of other entities they owned.

24. On or about September 4, 2020, MALIK MITCHUM used $38,743.00 of these fraud proceeds to purchase a Rolex watch from Fink's Jewelers in Norfolk, Virginia.

E. Alpha 2 Omega – January 2021 PPP Loan

25. On or about January 13, 2021, the defendant and MALIK MITCHUM applied for a PPP loan through ReadyCap Lending LLC using the entity Alpha 2 Omega. The lender subsequently approved the PPP loan in the amount of $150,000.00.

26. In this PPP application, the defendant and MALIK MITCHUM falsely claimed that Alpha 2 Omega was located at *** Expedition Street in Hampton, Virginia; had monthly payroll obligations of $60,000.00; had 9 employees; and that loan proceeds were to be used for business-related purposes. In addition to these false claims, the defendant and MALIK MITCHUM submitted fabricated bank statements in support their fraudulent application. In fact, Alpha 2 Omega had no such office, revenue, business activity, or employees.

27. On or about February 24, 2021, PPP funds in the amount of $150,000.00 were deposited in a Bank of America account (last four digits 5637) held in the name of Alpha 2 Omega Logistics LLC. Over the course of a month, the defendant and MALIK MITCHUM obtained the PPP funds by structuring withdrawals of U.S. currency and transferring money to accounts held in the names of other entities they owned.

F. Day and Night Trucking LLC – February 2021 PPP Loan

28. On or about February 19, 2021, the defendant and MALIK MITCHUM applied for a PPP loan through ReadyCap Lending LLC using the entity Day and Night Trucking LLC. The defendant had previously registered this entity with the Virginia State Corporation

Commission on or about January 14, 2021. The lender subsequently approved the PPP loan in the amount of $150,000.00.

29. In this PPP application, the defendant and MALIK MITCHUM falsely claimed that Day and Night Trucking LLC was located at *** Expedition Street in Hampton, Virginia; had monthly payroll obligations of $60,000.00; had 9 employees; and that loan proceeds were to be used for business-related purposes. In addition to these false claims, the defendant and MALIK MITCHUM submitted fabricated bank statements in support their fraudulent application. In fact, Day and Night Trucking LLC had no such office, revenue, business activity, or employees.

30. On or about February 26, 2021, PPP funds in the amount of $150,000.00 were deposited in a Bank of America account (last four digits 5293) held in the name of Day and Night Trucking LLC. Over the course of a month, the defendant and MALIK MITCHUM obtained the PPP funds by structuring withdrawals of U.S. currency and transferring money to accounts held in the names of other entities they owned.

G. <u>A2O Auto Brokers – May 2021 PPP Loan</u>

31. On or about May 5, 2021, the defendant and MALIK MITCHUM applied for a PPP loan through Newtek Small Business Finance using the entity A2O Auto Brokers. The lender subsequently approved the PPP loan in the amount of $170,800.00.

32. In this PPP application, the defendant and MALIK MITCHUM falsely claimed that A2O Auto Brokers was located at *** Expedition Street in Hampton, Virginia; had monthly payroll obligations of $68,333.00; had 9 employees; and that loan proceeds were to be used for business-related purposes. In fact, A2O Auto Brokers had no such office, revenue, business



activity, or employees.

33. On or about May 10, 2021, PPP funds in the amount of $170,800.00 were deposited in a Bank of America account (last four digits 0567) held in the name of A2O Auto Brokers LLC. Over the course of the next month, the defendant and MALIK MITCHUM obtained the PPP funds by structuring withdrawals of U.S. currency and transferring money to accounts held in the names of other entities they owned.

H. Intended Loss from Failed Attempts to Obtain PPP and EIDL Funds by Fraud

34. In addition to the foregoing, the defendant and MALIK MITCHUM submitted the following unsuccessful applications for pandemic-related benefits:

| Company | Loan | Amount | Date | Owner |
|---|---|---|---|---|
| Alpha 2 Omega Logistics | PPP | $105,000.00 (intended loss) | 4/26/2020 | Malik Mitchum |
| A2O Auto Brokers LLC | PPP | $337,500.00 (intended loss) | 6/25/2020 | Malik Mitchum |
| Southern by the Belle | PPP | $307,500.00 (intended loss) | 6/26/2020 | Jenna Mitchum |
| Southern by the Belle | PPP | $150,000.00 (intended loss) | 1/13/2021 | Jenna Mitchum |
| Southern by the Belle | PPP | $150,000.00 (intended loss) | 2/1/2021 | Jenna Mitchum |
| Alpha 2 Omega Logistics | PPP | $150,000.00 (intended loss) | 2/1/2021 | Malik Mitchum |
| Pure Pressure | PPP | $150,000.00 (intended loss) | 1/13/2021 | Malik Mitchum |
| Pure Pressure | PPP | $150,000.00 (intended loss) | 2/1/2021 | Malik Mitchum |
| A2O Auto Brokers LLC | PPP | $150,000.00 (intended loss) | 2/1/2021 | Malik Mitchum |
| A2O Auto Brokers LLC | PPP | $150,000.00 (intended loss) | 2/10/2021 | Malik Mitchum |
| Southern by the Belle | PPP | $150,000.00 (intended loss) | 3/14/2021 | Jenna Mitchum |
| Day and Night Trucking | PPP | $150,000.00 (intended loss) | 4/23/2021 | Jenna Mitchum |



I. <u>Additional Fraud Linked to the Conspiracy by IP Address</u>

35. Four additional companies submitted fraudulent applications for pandemic-related benefits using the IP address 173.50.79.63 and 75.2.222.80 – both of which are linked to the defendant and MALIK MITCHUM.

36. The carrier for IP address 173.50.79.63 was Verizon, and the customer was the defendant at \*\*\* Expedition Street, Hampton, Virginia. The defendant and MALIK MITCHUM used this same IP address on no fewer than eight occasions to submit fraudulent applications for EIDL and/or PPP funds.

37. The carrier for IP address 75.2.222.80 was AT&T, and the customer was the defendant at an address in the State of Georgia. The defendant and MALIK MITCHUM used this same IP address on no fewer than two occasions to submit fraudulent applications for EIDL and/or PPP funds.

38. The following are fraudulent applications for pandemic-related benefits submitted from these IP addresses.

| Company | Loan | Amount | Date | Owner |
|---|---|---|---|---|
| Laurie Landscaping | PPP | $150,000.00 (intended loss) | 1/13/2021 | INDIVIDUAL 1 |
| Laurie Landscaping | PPP | $150,000.00 (intended loss) | 2/10/2021 | INDIVIDUAL 1 |
| Laurie Landscaping | PPP | $150,000.00 (intended loss) | 4/8/2021 | INDIVIDUAL 1 |
| Pure Auto Repair | PPP | $150,000.00 (intended loss) | 2/1/2021 | INDIVIDUAL 2 |
| Pure Auto Repair | PPP | $150,000.00 (intended loss) | 2/10/2021 | INDIVIDUAL 2 |
| Stubbs Construction | PPP | $36,800.00 (actual loss) | 1/13/2021 | INDIVIDUAL 3 |



| Stubbs Construction | PPP | $150,000.00 (intended loss) | 2/10/2021 | INDIVIDUAL 3 |
| Stubbs Construction | PPP | $150,000.00 (intended loss) | 4/19/2021 | INDIVIDUAL 3 |
| Frankenstrain LLC | PPP | $150,000.00 (intended loss) | 2/13/2021 | INDIVIDUAL 4 |
| Frankenstrain LLC | PPP | $150,000.00 (intended loss) | 2/13/2021 | INDIVIDUAL 4 |
| Frankenstrain LLC | PPP | $150,000.00 (intended loss) | 2/15/2021 | INDIVIDUAL 4 |
| Frankenstrain LLC | PPP | $150,000.00 (intended loss) | 2/19/2021 | INDIVIDUAL 4 |
| Frankenstrain LLC | PPP | $132,200.00 (intended loss) | 5/3/2021 | INDIVIDUAL 4 |

39. The foregoing applications were all denied with the exception of the January 2021 application by Stubbs Construction for $36,800.00.

J.     <u>Additional Fraud Linked to the Conspiracy by Payments</u>

40. Three additional companies submitted fraudulent applications for pandemic-related benefits and later wired or otherwise deposited funds into accounts controlled by the defendant and the defendant.

| Company | Loan | Amount | Date | Owner |
|---|---|---|---|---|
| Vintage AIM | PPP | $150,000.00 (intended loss) | 2/24/2021 | INDIVIDUAL 5 |
| Vintage AIM | PPP | $150,000.00 (actual loss) | 3/22/2021 | INDIVIDUAL 5 |
| Touched by a Professional | PPP | $150,000.00 (actual loss) | 1/13/2021 | INDIVIDUAL 6 |
| Touched by a Professional | PPP | $150,000.00 (intended loss) | 2/11/2021 | INDIVIDUAL 6 |
| Touched by a Professional | PPP | $150,000.00 (intended loss) | 3/30/2021 | INDIVIDUAL 6 |
| DOL LLC | PPP | $150,000.00 (actual loss) | 1/13/2021 | INDIVIDUAL 7 |
| DOL LLC | PPP | $150,000.00 (intended loss) | 2/11/2021 | INDIVIDUAL 7 |



| | | | | |
|---|---|---|---|---|
| DOL LLC | PPP | $150,000.00 (intended loss) | 4/23/2021 | INDIVIDUAL 7 |

41. This fraud is linked to the conspiracy by the following payments to companies owned and operated by the defendant and MALIK MITCHUM.

| Company | Payment Amount | Date | Recipient |
|---|---|---|---|
| Vintage AIM | $20,000.00 | 5/21/2021 (10 days after receiving $150,000 in PPP funds) | Southern by the Belle (JENNA MITCHUM) |
| Touched by a Professional | $20,000.00 | 3/8/2021 (6 days after receiving $150,000 in PPP funds) | Alpha 2 Omega (MALIK MITCHUM) |
| DOL LLC | $10,000.00 | 2/24/2021 (4 days after receiving $150,000 in PPP funds) | Alpha 2 Omega (MALIK MITCHUM) |

## Conclusion

42. The defendant and MALIK MITCHUM received millions of dollars of fraud proceeds by wire transfer in interstate commerce. Many of these wire transfers affected financial institutions because they were victimized by the fraud.

43. The actual loss foreseeable to the defendant from fraud perpetrated as part of the conspiracy is not less than $1.4 million.

44. The intended loss foreseeable to the defendant from fraud perpetrated as part of the conspiracy is not less than $5.1 million.

45. The acts taken by the defendant, in furtherance of the offense charged in this case, including the acts described above, were done willfully and knowingly with the specific intent to



violate the law. The defendant acknowledges that the foregoing statement of facts does not describe all of the defendant's conduct relating to the offense charged in this case.

                                  Respectfully Submitted,

                                  Jessica D. Aber
                                  Acting United States Attorney

By:    _____
                                  D. Mack Coleman
                                  Assistant United States Attorney


13


Defendant's Signature: After consulting with my attorney and pursuant to the plea agreement entered into this day between myself, the United States and my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

*[signature]*
JENNA MITCHUM
Defendant

Defense Counsel's Signature: I am the attorney for defendant JENNA MITCHUM. I have carefully reviewed the above Statement of Facts with her. To the best of my knowledge, her decision to stipulate to these facts is an informed and voluntary one.

*[signature]*
Counsel for Defendant

14